IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                              ) | Case No. 7:16-cr-55 |
| ) | |
| ) | By: Michael F. Urbanski |
| SCOTT WAYNE RAMIREZ,    ) | |
|     Defendant              ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Scott Wayne Ramirez' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 59. The government opposes Ramirez' motion, ECF No. 63, and Ramirez has filed a reply, ECF No. 65. For the reasons stated herein, the court will **GRANT** Ramirez' motion.

**I.**

On October 20, 2016, a grand jury charged Ramirez in a three count Indictment. Count Two of that indictment charged him with attempting to possess with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841. On October 16, 2017, Ramirez pled guilty to Count Two and, in the written plea agreement, agreed to be responsible for at least 500 grams, but less than 1,500 grams, of a mixture or substance containing methamphetamine.

The Presentence Investigation Report (PSR) calculated Ramirez' total offense level as 27 and his criminal history category was III, based on misdemeanor convictions for reckless driving and DUI and that he was on state probation when he committed the instant offense. On May 7, 2018, the court sentenced Ramirez to a term of imprisonment of 60 months, with

1

four years of supervised release to follow. Ramirez is currently incarcerated at FCI Milan and has a projected release date of October 3, 2022.

Ramirez seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his various medical issues constitute "extraordinary and compelling" reasons warranting a sentence reduction due to the risk posed by COVID-19 and that he is at increased risk due to the outbreak at FCI Milan. Ramirez suffers from coronary artery disease, hypertension, and Type 2 diabetes. Ramirez asks the court to reduce his sentence to home confinement, and the government opposes any sentence reduction. As this matter is fully briefed, it is ripe for disposition.

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Ramirez' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence consistent with applicable policy statements; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors and if Ramirez is a danger to the safety of anyone else or the community.

    i.    <u>The government has waived the exhaustion requirement.</u>

The provision allowing defendants to bring motions for compassionate release under § 3582(c) was added by the First Step Act in order to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). While the statute allows a defendant to bring the motion before the district court, a petitioner must first exhaust his administrative remedies. See 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" Id. The first condition requires that the defendant fully exhaust all administrative rights – this means that it is not enough for the warden to respond within 30 days by denying the request for compassionate release. If the warden denies the request within 30 days, the petitioner must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the petitioner's request and has not responded.

Here, Ramirez made a request for compassionate release on May 1, 2020 to the warden of FCI Milan and the warden denied his request on May 18, 2020. ECF No. 59-2. In the

warden's letter denying his request, the warden specifically stated "[i]n the event you are not satisfied with this response and wish to appeal, you may contact your Unit Team to initiate an appeal in accordance with the Administrative Remedy Program." Id. Because Ramirez does not argue that he appealed the warden's decision, the court finds that Ramirez has not exhausted his available administrative remedies.

However, because the government states that it "does not contest that Ramirez has satisfied the exhaustion requirement of § 3582(c)(1)(A)," the government has waived such a requirement. ECF No. 63, at 3, see e.g., United States v. Russo, ___ F.Supp.3d ___, 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020) ("the Government can waive the affirmative defense of exhaustion."); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) (holding that the exhaustion requirement is a mandatory claims-processing rule that has two exceptions: waiver and forfeiture).

ii. Ramirez presents extraordinary and compelling reasons to warrant a sentence reduction.

Because Ramirez has exhausted his administrative remedies, the court must then consider if it should "reduce the term of imprisonment." See 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in

4

combination with, the reasons described in Application Notes (A)-(C). Id., at cmt. n. 1(A)-(D).

"In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)). Here, Ramirez satisfies both requirements. First, the government agrees that Ramirez' medical conditions—namely, Type 2 diabetes and a serious heart condition—constitute an "extraordinary and compelling reason" under the policy statement. See ECF No. 63 at 8; USSG § 1B1.13, cmt. n. 1(A). The Centers for Disease Control and Prevention lists both Type 2 diabetes and serious heart conditions as conditions that place people at an increased risk for severe illness from COVID-19.[1] While Type 2 diabetes and a serious heart condition would not typically constitute an extraordinary and compelling reason, in the context of the ongoing COVID-19 pandemic, the court agrees that Ramirez has satisfied this requirement. See United States v. Evans, No. 3:00-cr-63, 2020 WL 5121331, at *5 (E.D. Va. Aug. 31, 2020) ("[C]ourts have recognized that the COVID-19 pandemic can create an extraordinary and compelling reason for a sentence reduction where, absent the pandemic, the same medical conditions alone would not suffice.").

---

[1] See Centers for Disease Control and Prevention, People Who Are at Increased Risk for Severe Illness, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited September 9, 2020). Further, the list includes that people with hypertension "might be at an increased risk for severe illness from COVID-19." Id.

The court also finds that Ramirez has shown that he faces a particularized risk of contracting the virus. While FCI Milan has reduced the number of active cases of COVID-19, it has suffered from a serious outbreak, including the death of three inmates and a total of 144 positive cases among staff and inmates.[2] Further, FCI Milan currently has one positive inmate and one positive staff member. Accordingly, the court finds that Ramirez has established extraordinary and compelling reasons warrant a reduction in his sentence.

    iii.    <u>Ramirez is not a danger to the safety of anyone else or the community and a sentence reduction is appropriate after considering the § 3553(a) factors.</u>

While the parties agree that Ramirez has exhausted his administrative remedies and that he has established extraordinary and compelling reasons warrant a reduction in his sentence, the government opposes his release to home confinement because the § 3553(a) factors weigh against it. The court disagrees and finds that Ramirez is not a danger to the community and the § 3553(a) factors weigh in favor of release.

First, "the court is advised against grants of compassionate release when the petitioner is a danger to the safety of any person or to the community." <u>Turner v. United States</u>, No. 2:18-cr-128, 2020 WL 4370124, at *3 (E.D. Va. July 30, 2020) (citing USSG § 1B1.13(2)). As such, pursuant to § 1B1.13(2), the court must consider the 18 U.S.C. § 3142(g) factors in determining whether Ramirez is a danger to the safety of any other person or to the community. The relevant factors include "the nature and circumstances of the offense charged"; "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating

---

[2] <u>See</u> Bureau of Prisons, <u>COVID-19 Cases</u>, available at: https://www.bop.gov/coronavirus/ (last visited September 16, 2020).

6

to drug or alcohol abuse, [and] criminal history"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." See United States v. Rodriguez, ___ F.Supp.3d. ___, 2020 WL 1627331, at *11 (E.D. Pa. 2020).

Here, the government fails to argue that Ramirez is a danger to any person or the community. Indeed, the focus of the government's argument is that the § 3553(a) factors weigh in favor of his continued incarceration. To the extent that the government argues that Ramirez would re-engage in narcotic distribution because he proposes to return to the same place he previously engaged in such schemes, the court notes that the Bureau of Prisons labels Ramirez as a "low risk recidivism level." See ECF No. 59-4. Ramirez' record at FCI Milan further indicates that he is not a danger as FCI Milan is a low security prison and his inmate profile identifies him as a "security classificat'n minimum." Id. Accordingly, the court finds that Ramirez is not a danger to any person or to the community.

Second, the court must consider if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). Those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a). Here, the § 3553(a) factors weigh in favor of a sentence reduction.

The government argues that the § 3553(a) factors weigh against release because Ramirez was involved in a six to eight-month drug distribution conspiracy where he distributed quantities of heroin and methamphetamine from California to individuals in Virginia and that the 60-month sentence imposed by the court was below guidelines. The government also argues that Ramirez was 53 when he became involved in trafficking methamphetamine and that he and his wife were fully employed during the time of his involvement. In other words, the government argues that the "offense conviction was not the product of a youthful indiscretion" and that he "cannot blame his personal or family situation." ECF No. 63, at 10.

While the court agrees that Ramirez' conduct was serious, he served over 50% of his sentence. In addition, Ramirez does not have a violent criminal history and he was sentenced with a criminal history category of III. While incarcerated, Ramirez has only received one disciplinary infraction, and that was for possession of a cellphone and charger. See ECF No. 59-4, at 4. Ramirez denies that they were his. Id. With respect to deterrence and to protect the public from further crimes of the defendant, as noted above, the Bureau of Prisons labels Ramirez as a low risk of recidivism.

Finally, the crux of the government's argument—that Ramirez was too old and was gainfully employed—cut in favor of home confinement. Throughout the duration of his case, Ramirez was released on bond and lived at home and he self-reported to the Bureau of Prisons to begin his sentence. Accordingly, the court finds that Ramirez is not a danger to the safety of any other person or to the community and the § 3553(a) factors weigh in favor of compassionate release.

8

## III.

For the reasons stated herein, the court **GRANTS** Ramirez' motion for compassionate release, ECF No. 59, and **MODIFIES** Ramirez' sentence of imprisonment to time served, with supervised release with a condition of home confinement to follow for the remaining 25 months of his term of imprisonment, in addition to all of the terms and conditions of supervised release previously imposed. The order will be stayed for up to fourteen days, for the verification of Ramirez' residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release. Ramirez shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Ramirez' safe release, the parties shall immediately notify the court and show cause why the stay should be extended. Once released, Ramirez will self-quarantine at home for fourteen days.

The clerk is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: September 18, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.09.18 09:17:37 -04'00'

Michael F. Urbanski
Chief United States District Judge